United States District Court
Southern District of Texas
**ENTERED**
April 11, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FRANCISCO ORELLANO, | § | |
| TDCJ NO. 789788, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-0259 |
| | § | |
| MAJOR PITTMAN, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Francisco Orellano (TDCJ No. 789788) has filed a civil rights complaint ("Complaint")(Docket Entry No. 1) under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs by three defendants: Major Kristi Pittman, Officer Diana Ordonez, and Nurse Mark Varner. Defendants Pittman and Ordonez have filed a Motion for Summary Judgment with Brief in Support (Docket Entry No. 44). Defendant Varner has filed a separate Motion for Summary Judgment (Docket Entry No. 46). Orellano has not filed a response to either Motion and his time to do so has expired. After reviewing all of the pleadings, the exhibits, and the applicable law, the court will grant the defendants' Motions and dismiss this case for the reasons explained below.

## I. Background

When Orellano filed the Complaint in this case he was incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ") at the Stevenson Unit in Cuero, Texas.[1] The Complaint primarily concerns the conditions of Orellano's confinement at the Huntsville Unit, where Orellano was previously confined. Major Pittman is employed by TDCJ as a supervisor at the Huntsville Unit.[2] Varner is employed by the University of Texas Medical Branch ("UTMB") as a registered nurse at the Huntsville Unit.[3] Officer Ordonez is employed by TDCJ as a property officer at the Stevenson Unit.[4]

While at the Huntsville Unit on June 2, 2014, Orellano complained of "knee problems."[5] He was seen by a physician's assistant on June 5, and provided with a brace (described as a "knee sleeve") as well as Naproxen for pain.[6]

---

[1] Complaint, Docket Entry No. 1, p. 1.

[2] Id. at 3.

[3] Id.; Affidavit of Kathy A. Grey, RN, CNM ("Grey Affidavit"), Docket Entry No. 46-1, p. 2.

[4] Complaint, Docket Entry No. 1, p. 3.

[5] Supplement to Complaint, Docket Entry No. 1-2, p. 1.

[6] Correctional Managed Care Nursing Protocol for Musculoskeletal Symptoms, Docket Entry No. 46-2, p. 7; Grey Affidavit, Docket Entry No. 46-1, p. 3.

On June 15, 2014, Orellano asked to see "the doctor about [his] foot."[7] When Orellano was seen at the clinic on June 17 or 18, Varner reportedly refused to treat him, stating that his foot was "not bleeding" and there was "no emergency."[8] Subsequently, on June 23, a physician's assistant examined Orellano's right foot and determined that he had strained the ligament that connects the heel to the toes, a condition known as "plantar fasciitis."[9] Orellano was given a bottom bunk assignment and scheduled to receive a "foot injection" the following month.[10]

On July 14, 2014, Orellano was moved from the bottom bunk to a top bunk.[11] The next day, Orellano wrote to the medical department to complain about the "unapproved move."[12] On July 16, Orellano lost his balance while trying to climb up to his top bunk. He fell, hurting his hand and his back.[13] On July 18 Orellano was moved back to a bottom bunk after an officer discovered that

---

[7]Complaint, Docket Entry No. 1, p. 3.

[8]Supplement to Complaint, Docket Entry No. 1-2, p. 1.

[9]Grey Affidavit, Docket Entry No. 46-1, p. 3.

[10]Id.; Correctional Managed Care Clinic Notes, Docket Entry No. 46-2, p. 17.

[11]More Definite Statement, Docket Entry No. 11, p.1.

[12]Supplement to Complaint, Docket Entry No. 1-2, p. 1.

[13]Id.

Orellano had been "previously medically assigned" or restricted to a bottom bunk.[14]

On July 22, 2014, Orellano received medical treatment for the injuries he sustained when he fell from the top bunk on July 16, including a back brace and Ibuprofen for pain.[15] On July 30, 2014, x-rays were taken of Orellano's hand and he received a steroid injection on his right foot.[16]

On August 27, 2014, Orellano was transferred from the Huntsville Unit to the Stevenson Unit.[17] Upon his arrival at the Stevenson Unit, Officer Ordonez confiscated his knee brace.[18]

Orellano contends that Major Pittman wrongfully assigned him to the top bunk on July 14, 2014.[19] Orellano also contends that Varner failed to provide "appropriate medical assistance" before and after he fell from the top bunk on July 16, 2014.[20] Orellano contends that Officer Ordonez improperly confiscated his knee brace

---

[14] Id.

[15] More Definite Statement, Docket Entry No. 11, p. 5.

[16] Id.

[17] Supplement to Complaint, Docket Entry No. 1-2, p. 5.

[18] Id.; More Definite Statement, Docket Entry No. 11, p. 4.

[19] More Definite Statement, Docket Entry No. 11, p. 1.

[20] Id.

when he arrived at the Stevenson Unit on August 27, 2014.[21] Alleging that the defendants violated his rights under the Eighth Amendment, Orellano seeks $2 million in damages for his pain and suffering.[22] All three defendants move for summary judgment, arguing that Orellano's claims are without merit.

## II. Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id.

In deciding a summary judgment motion the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by

---

[21] Id.

[22] Complaint, Docket Entry No. 1, p. 4.

presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes County, 678 F.3d 344, 348 (5th Cir. 2012) (quoting TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002)); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to provide "specific facts showing the existence of a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

### III. Discussion

#### A. Official Capacity Claims

Major Pittman and Officer Ordonez move for summary judgment on the claims for monetary damages against them in their official capacity as state employees, arguing that these claims are barred by the Eleventh Amendment to the United States Constitution.[23] The court previously dismissed the official capacity claims against

---

[23] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.

Varner as barred by the Eleventh Amendment.[24] As the court noted in that order, it is well settled that the Eleventh Amendment bars a recovery of money damages under 42 U.S.C. § 1983 from state employees in their official capacity. See Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2001); Aguilar v. Texas Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998).

To the extent that Orellano seeks monetary damages in this case, the Eleventh Amendment bars his claims against all of the defendants in their official capacity as state employees. See Oliver, 276 F.3d at 742. Accordingly, the court will grant Major Pittman and Officer Ordonez's motion for summary judgment on this issue and will dismiss Orellano's request for monetary damages against them in their official capacity.

## B. Individual Capacity Claims

The defendants argue that they are entitled to qualified immunity from the claims against them in their individual capacity because Orellano cannot demonstrate a constitutional violation. Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. See Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986). As a result, courts will not

---

[24]Memorandum Opinion and Order, Docket Entry No. 31, pp. 5-6.

deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate," Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011). Therefore, a plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Id. at 2080 (citation omitted).

Orellano alleges that the defendants acted with deliberate indifference to a serious medical need in violation of the Eighth Amendment, which prohibits "cruel and unusual punishment." U.S. Const. amend. VIII. "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain." Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006) (internal quotation marks and citation omitted). "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A prison official acts with deliberate indifference only if he knows that an inmate faces a substantial risk of serious harm and disregards that risk. Farmer v. Brennan, 114 S. Ct. 1970, 1984 (1994). Orellano's claims against each of the defendants will be examined separately under this standard.

1.  Claims Against Varner

Orellano contends that Varner violated his rights on or about June 18, 2014, by refusing to treat him when he complained of pain in his right foot. The medical records refute this claim. The medical records show that Varner examined Orellano on June 18, 2014, and observed that he had a full range of motion in his right lower extremity, his movement and gait were normal, his peripheral pulses were present, and there was no swelling, stiffness, redness, or heat noted.[25] Varner instructed Orellano to keep his foot elevated as much as possible, limit physical activity, and to resubmit a sick call request if his symptoms were not resolved.[26] According to an affidavit from Kathy Grey, a UTMB nurse manager, Varner properly evaluated Orellano and followed the UTMB Nursing Protocol for Musculoskeletal Symptoms.[27] Because Orellano was already taking Naproxen as prescribed for knee pain, it was unnecessary to provide additional pain medicine.[28]

Orellano also contends that Varner violated his rights by refusing to treat him or reassign him to the bottom bunk after he

---

[25] Grey Affidavit, Docket Entry No. 46-1, p. 3; Correctional Managed Care Nursing Protocol for Musculoskeletal Symptoms, Docket Entry No. 46-2, pp. 3-16.

[26] Correctional Managed Care Nursing Protocol for Musculoskeletal Symptoms, Docket Entry No. 46-2, pp. 15-16.

[27] Grey Affidavit, Docket Entry No. 46-1, p. 3.

[28] Id.; Correctional Managed Care Nursing Protocol for Musculoskeletal Symptoms, Docket Entry No. 46-2, p. 11.

fell from the top bunk on July 16, 2014. The medical records also refute this claim. The medical records show that Varner evaluated Orellano and observed that he had a slow guarded gait with low back pain.[29] As explained in the affidavit from Kathy Grey, Varner had no authority, as a nurse, to prescribe medication or order treatment.[30] The medical records confirm that Varner contacted a physician's assistant, who prescribed pain medication and ordered a lumbar x-ray for Orellano.[31] According Grey, it was unnecessary to reassign Orellano to a bottom bunk because a bottom-bunk restriction was already in place.[32] She notes, moreover, that nurses have no authority to order restrictions.[33]

For purposes of the Eighth Amendment, a showing of deliberate indifference requires a prisoner who alleges denial of medical care to submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Gobert v. Caldwell, 463

---

[29]Correctional Managed Care Nursing Protocol for Musculoskeletal Symptoms, Docket Entry No. 46-2, p. 23.

[30]Grey Affidavit, Docket Entry No. 46-1, p. 6.

[31]Correctional Managed Care Nursing Protocol for Musculoskeletal Symptoms, Docket Entry No. 46-2, pp. 25-26.

[32]Grey Affidavit, Docket Entry No. 46-1, p. 4; TDCJ Health Summary for Classification, Docket Entry No. 46-3, pp. 3-4.

[33]Grey Affidavit, Docket Entry No. 46-1, p. 6.

F.3d 339, 346 (5th Cir. 2006)(internal quotation and citation omitted). The medical records in this case refute Orellano's claim that Varner refused to treat him on June 18 or July 16. To the extent that Orellano disagrees with the level of care that he received, a prisoner's disagreement with his medical treatment does not constitute deliberate indifference. Id. (citations omitted). Viewing all of the evidence in the light most favorable to the plaintiff, as non-movant, Orellano does not show that Varner violated the Eighth Amendment. As a result, Varner is entitled to qualified immunity and his motion for summary judgment will be granted.

2. Claims Against Major Pittman

Orellano contends that Major Pittman violated his Eighth Amendment rights by assigning him to a top bunk on July 14, 2014, when the medical department had restricted him to a bottom bunk. The defendants argue that the top bunk assignment was made inadvertently, and not with deliberate indifference.[34] In support of this argument, the defendants present an affidavit from Cassity Konen, who serves as Chief of Classification at the Huntsville

---

[34]The defendants argue that Orellano's claim against Major Pittman is subject to dismissal because he did not properly exhaust administrative remedies by naming her in the grievance that he filed regarding his assignment to the top bunk. See Pittman and Ordonez's Motion for Summary Judgment, Docket Entry No. 44, at 6-9. Because the claim against Major Pittman is without merit, the court does not reach the issue of exhaustion.

Unit.[35]  Konen explains that each inmate has a tag with information about them hanging from a board in the "count room."[36]  The tags help unit personnel keep track of the offenders and include information such as an offender's birth date, work assignments, living assignments, and medical restrictions (such as a lower bunk restriction).[37]  After Orellano filed a grievance about his top bunk assignment, an investigation revealed that Orellano's bottom bunk restriction was not printed on his tag.[38]  As soon as count-room personnel were made aware of his bottom bunk restriction, Orellano was moved back to a bottom bunk.[39]

Because Orellano's lower bunk restriction was not recorded on his tag in the count room, unit personnel were unaware of this restriction when he was moved to a top bunk on July 14.  Orellano does not allege that Major Pittman or any other officer knew about his lower bunk restriction, but assigned him to the top bunk anyway.  Under these circumstances Orellano could only show possible negligence by Pittman, which does not amount to deliberate indifference and is insufficient to establish a violation of the Eighth Amendment or defeat qualified immunity.  See Doe v. Dallas

---

[35]Affidavit of Cassity Konen, Docket Entry No. 44-5, p. 1.

[36]Id.

[37]Id.

[38]Id. at 2.

[39]Id.

Indep. Sch. Dist., 153 F.3d 211, 219 (5th Cir. 1998) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity."); see also Brown v. Callahan, 623 F.3d 249, 255 (5th Cir. 2010) (Deliberate indifference is "a stringent standard of fault . . . [that] is more than mere negligence or even gross negligence.") (internal quotation and citations omitted). Absent a showing that Major Pittman deliberately disregarded Orellano's bottom bunk restriction when assigning him to a top bunk, she is entitled to qualified immunity from Orellano's claim against her.

    3.   Claim Against Officer Ordonez

Orellano contends that Officer Ordonez violated his rights when she confiscated his knee brace upon his arrival at the Stevenson Unit on August 27, 2014. Officer Ordonez has provided an affidavit in response to Orellano's allegation.[40] Officer Ordonez explains that she confiscated Orellano's knee brace because the medical pass that he showed her was expired.[41] Because Orellano was unable to provide a current medical pass for the knee brace, she confiscated it according to prison policy.[42] However, she explained to Orellano that he could submit a request called an I-60 in order

---

[40]Affidavit of Diana Ordonez, Docket Entry No. 44-6, p. 2.

[41]Id.

[42]Id.

to receive a valid pass for the knee brace and it would be returned to him.[43] Ordonez took the knee brace to the medical department so that Orellano could retrieve it once he completed the proper procedure and gained approval from a medical provider.[44] When Orellano was evaluated for a knee brace by a physician at the Stevenson Unit, the physician determined that the knee was "stable" and that he did not need a brace.[45]

As defendants concede, Orellano's medical records reflect that he was approved to have a knee brace for one year on June 5, 2014.[46] There is no dispute, however, that the pass in Orellano's possession had expired when Officer Ordonez confiscated the knee brace on August 27, 2014. Orellano does not otherwise allege that his knee was unstable or that it would have been obvious to Officer Ordonez that he needed the knee brace at the time he arrived at the Stevenson Unit. To the extent that Orellano contends that Officer Ordonez mistakenly determined that his pass was expired, this allegation establishes no more than negligence, and not deliberate indifference. See Doe, 153 F.3d at 291. Based on this record, Orellano does not establish that Ordonez confiscated his knee brace

---

[43] Id.

[44] Id.

[45] Correctional Managed Care Clinic Notes, Docket Entry No. 44-2, p. 10.

[46] Offender Medical Pass, Docket Entry No. 44-2, p. 3.

with deliberate indifference, which requires a showing of actual knowledge and conscious disregard of a risk of harm. See Lawson v. Dallas County, 286 F.3d 257, 262 (5th Cir. 2002) (citing Farmer, 114 S. Ct. at 1984). Because Orellano fails to demonstrate an Eighth Amendment violation, Officer Ordonez is entitled to qualified immunity. The motion for summary judgment on this issue will be granted and, absent a valid claim against any of the defendants, this action will be dismissed.

### IV. Conclusion

The court **ORDERS** as follows:

1. Defendants Pittman and Ordonez's Motion for Summary Judgment (Docket Entry No. 44) is **GRANTED**.

2. Defendant Varner's Motion for Summary Judgment (Docket Entry No. 46) is **GRANTED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 11th day of April, 2016.

SIM LAKE
UNITED STATES DISTRICT JUDGE